UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD E. DENNIS, JR.,

      Petitioner,       Case Number 17-12678

v.                Honorable David M. Lawson

ROBERT NAPEL,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

A jury in Wayne County, Michigan convicted Michigan prisoner Gerald E. Dennis, Jr. of second-degree murder for beating his sister to death with a tire iron. He had been suffering from some forms of mental illness. He challenged his conviction in state court on direct appeal and in a post-judgment motion raising several claims, some of which involved his perception that his mental illness was not accounted for adequately in the presentation of evidence or at sentencing. Failing to obtain relief, he filed an amended petition for a writ of habeas corpus without the assistance of a lawyer under 28 U.S.C. § 2254. Because the state courts' adjudications of Dennis's claims were not contrary to and did not misapply controlling federal law, the petition will be denied.

I.

The Michigan Court of Appeals summarized the facts of the case as presented at trial in its opinion on direct review as follows:

> Defendant, his sister, Deborah Seifert, Jamill Jenkins and Jill Kramer lived together in Lincoln Park, Michigan. Defendant, Seifert, and Jenkins used cocaine on one particular evening, while Kramer went to sleep.

When Kramer awoke the next morning, she found Seifert lying on her back, with blood in the area of her right eye and mouth. Blunt-force injuries to her head resulted in 10 lacerations all over her head and face.

Her head had been "flattened." Lincoln Park Police officers responded to the scene and gathered evidence, including a black metal bar covered with hair and blood they found in the backyard area of the house. Furthermore, police officers found a vehicle car jack, which complemented the black metal bar, in defendant's bedroom.

At the police station, defendant gave conflicting statements to the police, initially claiming that Jenkins was responsible for the murder. Eventually, however, defendant admitted to the murder. DNA testing was conducted on various pieces of evidence, including swabs collected from blood found on defendant's face and left arm. The testing revealed that while defendant was the overwhelming source of DNA from the samples, Seifert could not be excluded as a possible contributor.

*People v. Dennis*, No. 321334, 2015 WL 8274987, *1 (Mich. Ct. App. Dec. 8, 2015).

Dennis was sentenced to prison for 16 to 30 years. He filed a direct appeal raising claims concerning the sufficiency of the evidence and the validity of his sentence. The court affirmed his conviction and sentence, *ibid.*, and the Michigan Supreme Court denied his application for leave to appeal, *People v. Dennis*, 499 Mich. 930, 878 N.W.2d 875 (2016).

Dennis then filed a habeas petition in this Court on August 14, 2017 alleging the same claims he raised in his state direct appeal. Per his request, the Court held the petition in abeyance to allow him to return to state court to exhaust remedies on additional issues. He filed a motion for relief from judgment in the state trial court raising claims of juror bias, insufficient jury instructions, the admission of his statements to the police, judicial bias, and the effectiveness of trial and appellate counsel. The trial court denied the motion, *People v Dennis*, No. 12-008223-01-FC (Wayne Co. Cir. Ct. June 16, 2019), ECF No. 13-19, and the appellate courts denied his leave-to-appeal applications, *People v. Dennis*, No. 355241 (Mich. Ct. App. Jan. 17, 2021), *People v. Dennis*, 508 Mich. 939, 964 N.W.2d 37 (2021).

- 2 -

Dennis then asked this Court to reactivate his case, and he filed an amended habeas petition alleging the claims that he raised on direct appeal and in his post-conviction motion in the state courts.  The issues presented for adjudication are as follows:

I.    The prosecution presented insufficient evidence on the element of identity to support the jury's verdict of guilty on one count of second-degree murder in violation of due process of law guaranteed by the Fifth Amendment to the United States Constitution.

II.   His sentence of 16 years to 30 years for second-degree murder violates the guarantee against cruel and unusual punishment provided by the United States Constitution and the guarantee against cruel and unusual punishment provided by the Michigan Constitution.

III.  The trial court abused its discretion and denied him the right to a fair and impartial jury by not sua sponte dismissing a juror that the court knew, or should have known, was a biased juror and he was denied his right to the effective assistance of trial counsel for failing to further question, dismiss for cause, or use a peremptory challenge to dismiss the same juror.  U.S. Const. Ams. VI & XIV; Mich. Const. 1963, Art 1, § 20.

IV.   He was denied his right to a fair trial and a properly instructed jury where the trial court reversibly erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. U.S. Const. Ams. V & XIV.

V.    His Fifth and Fourteenth Amendment rights were violated when the court admitted his statements from his police interrogations when the court knew, or should have known, that they were not knowingly and intelligently waived because of his actual mental ability to understand.  U.S. Cont. Am. V.

VI.   The trial court violated his due process right to a fair trial when it invaded the prosecution's role and expressed the judge's belief in the prosecution's case and disbelief in his innocence.  U.S. Const. Ams. V & XIV; Mich. Const. 1963, Art 1, § 20.

VII.  He was denied his right to the effective assistance of counsel at his trial by counsel failing to call a witness who would have supported his case and given testimony of his mental illness that was not presented at trial.

VIII. He was denied the effective assistance of counsel guaranteed by the Federal Constitution where appellate counsel (i) neglected strong and critical issues

- 3 -

> which must be seen as significant and obvious, and (ii) failed to supply him
> with discovery.  U.S. Const. Am. VI; Mich. Const. 1963, §§ 17, 20.

Am. Pet. at a – c, ECF No. 11, PageID.113-115.

The warden argues that all the habeas claims raised in Dennis's state court motion for relief from judgment are procedurally defaulted here because Dennis did not raise them on direct appeal and did not give a good reason for not doing so.  The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]"  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  That means federal courts

give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). The "holding of a Supreme Court decision is the legal rule or principle [the court the relies on] to decide a case." *Andrew v. White*, 604 U.S. ---, No. 23-6573, 2025 WL 247502, at *3 (U.S. Jan. 21, 2025) (per curiam).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).

## A.

Dennis argues that the trial evidence was insufficient to establish his identity as the perpetrator and therefore did not support his second-degree murder conviction. That claim was rejected by the Michigan Court of Appeals on direct appeal. The court referred to Dennis's admission to the police that he was the one who beat his sister. It also cited evidence that the metal bar found in the back yard had his sister's blood and hair on it, and the metal bar was the handle matching the vehicle jack that was found in Dennis's bedroom. The court also pointed out that "DNA from blood samples recovered from defendant's face and left hand was potentially traceable to" his sister. Another occupant of the house, Jamill Jenkins, "could be dismissed as a suspect, as his clothes tested negative for blood." Although the police found a t-shirt in the basement with Jenkins's blood on it, his explanation, the court wrote, "was consistent with his getting stabbed months before the night [the sister] was murdered." *Dennis*, 2015 WL 8274987 at *1.

That decision faithfully applied federal law, and it was not an unreasonable determination of the facts. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts

- 6 -

that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.   For habeas corpus, that rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).   The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review.   *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.   Mich. Comp. Laws § 750.317; *People v. Goecke*, 457 Mich. 442, 474, 579 N.W.2d 868, 878 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996)).   Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.   *Id.* at 464, 579 N.W.2d at 878 (citing *People v. Aaron*, 409 Mich. 672, 678, 299 N.W.2d 304, 326 (1980)).   Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm.   *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998).   As with any offense, the prosecution

must prove beyond a reasonable doubt that the defendant committed the charged crime. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216, 218 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177, 180 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, 149 N.W.2d at 218 *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985), and the defendant's intent, *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31, 35 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78, 83 (2000).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact easily could have found the essential elements of second-degree murder and concluded that Dennis committed the killing. Dennis's own admissions of guilt to the police, the blood evidence, the murder weapon evidence, the DNA evidence, and the reasonable inferences that flow from them, establish that Dennis was the person who beat his sister to death and that he acted with the requisite intent to support his second-degree murder conviction. Dennis challenges the findings and inferences the jury drew from the testimony and evidence presented at trial. However, it is the job of the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos*, 565 U.S. at 7; *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that the petitioner committed the crime. Habeas relief is not warranted on this claim.

## B.

Dennis next asserts that he is entitled to habeas relief because his sentence constitutes cruel and unusual punishment under the United States and Michigan Constitutions, because the trial

court paid insufficient attention to his mental illness. The Michigan Court of Appeals disagreed, stating that because the minimum sentence of 16 years fell within the applicable state sentencing guideline range, it was proportionate and "not cruel or unusual." *Dennis*, 2015 WL 8274987 at *2. The court also observed that "[t]he record reflects that the trial court carefully considered defendant's mental condition in determining a proportionate sentence to impose." *Ibid.*

"[T]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Courts reviewing Eighth Amendment proportionality claims must afford "substantial deference" to the legislatures in determining the appropriate punishments for crimes. *Solem v. Helm*, 463 U.S. 277, 290 (1983). "[A] sentence within the statutory maximum . . . generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quotation omitted). Dennis's sentence is within the statutory limits for the crime of second-degree murder, which carries a maximum life sentence. *See* Mich. Comp. Laws § 750.317. Dennis's sentence is neither "extreme" nor "grossly disproportionate" so as to violate the Eighth Amendment. *Harmelin*, 501 U.S. at 959.

The state courts' determination that the sentence was not cruel or unusual is consistent with these tenets of federal law. Habeas relief on this ground is not warranted.

C.

Dennis also complaints that he was denied a fair trial when the trial judge did not dismiss one of the jurors for bias. He also asserts an ineffective-assistance-of-counsel claim, discussed below, related to this issue. The claim was addressed by the trial court when it rejected the post-conviction motion. That court summarized the colloquy with the juror during jury selection:

> [The juror] stated that his mother had a long history of drug abuse and that he "had a hard time with credibility when it comes to believing somebody." However, he also stated, "would it interfere with this?" to which he said, "That would be my best to not let it but with her situation it's been tough, so." The juror clearly conveyed his feelings about his mother and her drug addiction, but also indicated on the record that he would try his best to not let the feelings he had toward his mother and her drug addiction interfere with the facts of the case for which he was a juror.

*Dennis*, No. 12-008223-01-FC at 3-4, ECF No. 13-19, PageID.1057 (footnotes omitted). The court believed that the juror's responses did not require his removal. It also reasoned that "even though evidence was presented that the [d]efendant was a drug user; it was not the substance of the case," because "[t]he [d]efendant was on trial for murder, not a drug related offense," and "the [d]efendant did not testify at trial," so the juror's "ability to believe a drug user is not at issue here." *Ibid.*

This decision is consistent with federal law. An accused person has the right to a trial "by an impartial jury" under the Sixth Amendment, made applicable to the states through the Fourteenth Amendment. *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Turner v. Louisiana*, 379 U.S. 466 (1965). "At its core, this right to an 'impartial' jury prohibits a court from empaneling jurors who have a personal bias against the defendant or who have decided on the defendant's guilt before hearing any evidence." *United States v. O'Lear*, 90 F.4th 519, 525 (6th Cir. 2024) (citing *Irvin v. Dowd*, 366 U.S. 717, 722–28 (1961); *United States v. Burr*, 25 F. Cas. 49, 50-51 (C.C.D. Va. 1807) (No. 14, 692G) (Marshall, C.J.)). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Jurors, however, are presumed to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it . . .," *Smith*, 455 U.S. at 217. The habeas

- 10 -

petitioner bears the burden of proving jury bias. *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008).

The state court faithfully applied this federal law. As it observed, the juror indicated that he could be impartial when deciding the case and would follow the law as explained by the judge. Dennis has not rebutted the presumption of correctness afforded to the state court's finding that the juror was impartial. And because Dennis did not testify at trial, his credibility was not at issue in the case (in contrast to other witnesses, such as prosecution witness Jill Kramer, who apparently was using drugs at the time of the incident). Dennis has not rebutted the state court's factual finding or otherwise established that the juror was biased against him. Habeas relief is not warranted on this claim.

### D.

Dennis's next claim is that the trial court's refusal to instruct the jury on the lesser offense of voluntary manslaughter deprived him of a fair trial. This issue also was raised and addressed in the post-conviction motion. In its opinion denying the motion, the trial court reviewed defense counsel's argument that the evidence showed that the victim provoked Dennis by calling him harsh names and accusing him of performing fellatio on a person called "Jungle Jim," and there was no cooling-off period before the assault with the tire iron. Quoting its own mid-trial ruling, the court stated that "it was clearly made in the Defendant's own statement, which is supported by the evidence at the scene, that the victim was asleep prior to him assaulting her which means that, I mean, he indicated he waited until she fell asleep to allow so that she wouldn't call the police; that gives the cooling off period that is sufficient for manslaughter; that is why I [don't] believe it is supported in this case." *Dennis*, No. 12-008223-01-FC at 5-6, ECF No. 13-19, PageID.1059 (footnotes omitted). The court added that "the [d]efendant had talked about the fact that he planned

the murder for weeks and that after the incident with 'Jungle Jim,' he wished he had killed her then." *Id.* at 1060  The court reaffirmed its ruling that a voluntary manslaughter instruction was not supported by the evidence. *Ibid.*

The question whether the evidence supported a voluntary manslaughter jury instruction under state law is not an issue that can engage a federal habeas court.  That invokes state, not federal, law. *See, e.g.*, *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (holding that "a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  The federal due process aspect of this claim fairs no better; the Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case").  The "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).  "Declining to grant a request to 'present a state-created, not federally required, defense is . . . at worst . . . an error of state law; and . . . a violation of state law does not violate the Constitution.'" *Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020) (quoting *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (*en banc*)) (ellipses added).  Dennis has no right to relief on his claim about the trial court's failure to instruct the jury on voluntary manslaughter.

## E.

Dennis argues that he is entitled to habeas relief because the trial court erred by admitting his statements to the police when it should have known that the waiver of his *Miranda* rights was

not knowing, intelligent, and voluntary, particularly considering Dennis's mental deficits.  This issue was raised first in Dennis's post-conviction motion.  The trial judge summarized the facts concerning the statements as follows:

> The Defendant was interviewed by lieutenant Joseph Lavis on February 28, 2012. Prior to the interview, Mr. Lavis provided the [d]efendant with a copy of the Lincoln Park Police Department Miranda form.  At trial, Mr. Lavis testified that when he interviewed the [d]efendant, he did not have any problems understanding him, that the [d]efendant did not appear to be under the influence of any drugs or narcotics, that he was lucid and clear, and that it appeared to him that the [d]efendant understood the constitutional rights that were provided to him.  Mr. Lavis also testified that if he thought the [d]efendant was under the influence of drugs, he would not have interviewed him and waited until a later time.  Further, upon questioning by this Court, Mr. Lavis testified that the [d]efendant did not appear to be disoriented in any way, seemed to be aware and oriented as to the time and place, and that at no point he appeared to be disoriented or in any way suffering from mental defect, and that if he had, he would have terminated the interview.  It should also be noted that prior to trial, on September 20, 2013, during a pretrial hearing, the [d]efendant's competency report from Dr. Miller revealed that Dr. Miller found the [d]efendant competent to stand trial.  The Forensic Department also found the [d]efendant competent to stand trial.

*Dennis*, No. 12-008223-01-FC at 7-8, ECF No. 13-19, PageID.1061 (footnotes omitted).  Based on those findings, the court concluded that "[n]othing in the record suggests that the Defendant did not knowingly or voluntarily waive his *Miranda* rights."  *Id.* at 1062.

That decision did not contravene or unreasonably apply federal law.  Well-established tenets of constitutional law provide that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards . . . [that] inform [an] accused person [ ] that . . . he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent.  *Id.* at 444, 475.

- 13 -

Moreover, the Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). But under federal law, a confession is not considered involuntary unless (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (emphasis in original). The ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Factors to consider include the presence or absence of police coercion (a "crucial element"), length of interrogation, location of interrogation, continuity of interrogation, the suspect's maturity and education, the suspect's physical condition and mental health, and whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 (stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was given involuntarily rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. *Ibid.*

Dennis has not overcome the state court's finding of voluntariness, and he has not shown that either his *Miranda* waiver or his police statements were involuntary. Initially, he has not identified or even suggested that the police engaged in coercive conduct. Moreover, the record does not show a lack of knowing and intelligent conduct when he waived his *Miranda* rights and confessed to the crime. True, Dennis has a history of mental illness — but the police testimony

- 14 -

belies his claim that his mental condition precluded him from validly waiving his rights. The interviewing officer testified that Dennis did not appear to be disoriented or under the influence of drugs, that he was lucid and clear, and that he seemed to understand his rights at the time of the interview. Dennis offers no evidence in response to show that he did not comprehend his *Miranda* rights and knowingly waive them before speaking with the police. Additionally, Dennis was examined after his interview and arrest and was deemed competent to stand trial. He has not established that his *Miranda* waiver was invalid or that the trial court erred in admitting his statements to the police at trial. Habeas relief is not warranted on this claim.

F.

Next, Dennis argues that he was denied due process because the trial judge was biased against him, based on rulings he made on objections and questions he posed to some of the witnesses. The trial judge rejected this argument in the post-conviction motion decision, explaining that the "Court was routinely overruling or sustaining objections, asking the witnesses questions to clarify undeveloped testimony, and at times ordering a witness not to answer specific questions as the answers may have been outside the scope of questioning or prejudicial to the [d]efendant." *Dennis*, No. 12-008223-01-FC at 9, ECF No. 13-19, PageID.1063.

The record does not support a finding of bias. Unquestionably, the Due Process Clause of the Fourteenth Amendment guarantees a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Bias can arise from a judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). Dennis makes no claim to any such thing here. It also can be evidenced by "judicial misconduct" in which the judge is accused of conducting the proceedings

- 15 -

in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). However, adverse rulings themselves are not sufficient to establish bias or prejudice. *Liteky*, 510 U.S. at 555.

Dennis's evidence of bias is confined to his dissatisfaction with some of the trial judge's rulings. That does not suffice to overcome the presumption that the trial court properly discharged its duties. Habeas relief is not warranted on this claim.

## G.

Dennis next asserts that he is entitled to habeas relief because trial counsel was ineffective by failing to challenge one of the jurors, referenced earlier, and by failing to present a witness — the petitioner's sister — who could have testified about his mental illness (as she did at sentencing) and would have been favorable to the defense. These claims were raised first in state court in Dennis's post-conviction motion. The trial judge did not respond to the argument concerning counsel's performance relating to challenging the juror. The court rejected the argument that trial counsel performed deficiently by not calling the defense witness on two bases: the witness would not have been qualified to give testimony as to the petitioner's mental illness because she did not have the expertise required by the state evidence rules; and the petitioner's mental illness was not a fact issue at the trial. *Dennis*, No. 12-008223-01-FC at 10-11, ECF No. 13-19, PageID.1064.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And most relevant here, where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether

"there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Double deference does not apply to the claim relating to the allegedly biased juror because the state court never addressed it. So-called *de novo* review, therefore, applies. *See Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014); s*ee also Stermer v. Warren*, 959 F.3d 704, 722-24 (6th Cir. 2020). But that issue dies aborning. This Court's determination that the juror did not exhibit impermissible bias dooms Dennis's effort to show that his trial attorney counsel preformed deficiently by not raising a challenge to the juror or that such a challenge would have been successful. Trial counsel cannot be deemed deficient for failing to make a meritless argument or a futile objection, *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000), and since the juror would not have been excused if a challenge had been made, Dennis cannot show prejudice.

The trial judge's decision that counsel performed adequately when he did not call Dennis's sister at trial was consistent with federal law. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. However, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. True, when making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. But the failure to call witnesses or present other evidence constitutes

ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Taking the second element of an ineffective-assistance-of-counsel claim first, the trial court's ruling that the proposed testimony by the petitioner's sister was inadmissible under Michigan law precludes a finding of prejudice. And proper deference to counsel's trial strategy pretermits a finding of deficient performance. Counsel reasonably may have decided not to call the petitioner's sister because she had not seen him for five years before the crime and her testimony could have potentially been damaging to the defense or seen as biased in light of her familial relationship. Dennis also was not deprived of a substantial defense because the jury was aware of his mental health issues and counsel was able to argue that the jury should not consider Dennis's statements to the police due to his mental illness.

Habeas relief is not warranted on this claim.

## H.

Last, Dennis contends that he was deprived of his right to the effective assistance of appellate counsel because his appellate attorney did not raise all the issues Dennis asserted in his post-conviction motion and did not provide him with certain discovery materials. The trial judge rejected that argument in his ruling on the post-conviction motion, reasoning that the substantive issues presented in that motion had no merit, and court records indicated that Dennis received a copy of his file in 2017. *Dennis*, No. 12-008223-01-FC at 12, ECF No. 13-19, PageID.1067; *id.* at 1066.

It is true that the Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985); *Halbert v. Michigan*,

545 U.S. 605, 609-10 (2005).  But court appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective-assistance-of-appellate-counsel claim must defer twice: first to appellate counsel's decision not to raise an issue, and secondly, to the state court's determination that appellate counsel was not ineffective.  *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Dennis's main argument is that his appellate attorney did not raise his post-judgment issues on direct appeal.  Because there is no merit to those claims, appellate counsel cannot be faulted for not raising them.  *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").  Moreover, Dennis's appellate attorney raised substantial issues on direct appeal including claims concerning the sufficiency of evidence and the validity of his sentence.  Dennis has not shown that appellate counsel's strategic decisions fell outside the wide range of professionally competent assistance.  Habeas relief will not be granted on this claim.  *See Hand v. Houk*, 871 F.3d 390, 411 (6th Cir. 2017).

III.

Neither of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the amended petition for a writ of habeas corpus is

**DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  February 3, 2025